* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Rowell with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Insurance coverage existed on date of injury.
5. Plaintiff sustained a compensable injury on September 21, 2005.
6. Plaintiff's claim was accepted via the filing of a Form 60 on November 22, 2005.
7. An employment relationship existed between Plaintiff and Defendant-Employer during some or all of the time period of the previous paragraphs.
8. The parties stipulate that Plaintiff's average weekly wage is $850.00.
9. Plaintiff was paid compensation from October 3, 2005, through May 22, 2006.
10. The parties stipulated into evidence Stipulated Exhibit No. 1, Pre-Trial Agreement, submitted subsequent to the hearing by Defendant's attorney, by letter dated September 12, 2008. The Pre-Trial Agreement was modified by the parties and stipulated by e-mail dated December 23, 2008. The modification stipulated to by the parties on December 23, 2008, removed the stipulation in the September 12, 2008, Pre-Trial Agreement that Plaintiff had returned to work on May 22, 2008, as Plaintiff had not returned to work on May 22, 2008.
11. The parties stipulated into evidence Stipulated Exhibit No. 2, to include, as referenced in the table of contents, Industrial Commission Forms and Filings and medical records. Subsequent to the hearing, the parties submitted additional supplementation to Stipulation Exhibit # 2, as revised and reflected in the table of contents. Specifically, on January 14, 2009, the parties supplemented Stipulation Exhibit # 2 to include medical records of Dr. Matthew Block and a summary of his interview on November 5, 2008. *Page 3 
12. The following depositions were received into evidence before the Deputy Commissioner:
 a. Dr. David Allen, M.D.
 b. Dr. Mark Foster, M.D.
 c. Dr. David Strom, M.D.
 * * * * * * * * * * * ISSUES 1. Issues of Plaintiff:
 a. Is Plaintiff entitled to have Defendants pay for his treatment with Drs. Ward and Strom?
 b. To what compensation is Plaintiff entitled?
 2. Issues of Defendants:
 a. Should Defendants' motion to dismiss be granted based on Plaintiff's failure to prosecute his claim?
 b. Is Plaintiff entitled to any benefits based on his failure to remain in contact with Defendants?
 c. Does Plaintiff have an affirmative duty to remain in contact with Defendants in order to entitle himself to benefits?
 d. Do Defendants have a right to rely on Plaintiff's representations related to his claim?
 e. Is Plaintiff disabled due to his unrelated health conditions, especially his heart condition?
 * * * * * * * * * * * *Page 4 RULINGS ON EVIDENTIARY MATTERS
The objections raised in the depositions taken of Dr. David Allen, M.D., Dr. Mark Foster, M.D., and Dr. David Strom, M.D., are ruled upon in accordance with the applicable rules of law and the Opinion and Award in this case.
 * * * * * * * * * * *
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 53 years old and living in Fairmont, NC. Plaintiff had an 8th grade education and had trouble reading.
2. Plaintiff had been performing drywall work since age 15. At the time of his injury by accident, Plaintiff was performing drywalling with Defendant-Employer. On September 21, 2005, Plaintiff sustained injuries to multiple parts of his body when he fell from scaffolding. The main injury to Plaintiff was to his left ankle/foot.
3. Defendants accepted Plaintiff's claim as compensable and began paying disability compensation and for Plaintiff's medical treatment. Defendants admitted to the compensability Plaintiff's September 21, 2005, injury by accident by filing an Industrial Commission Form 60 dated November 22, 2005.
4. Plaintiff began treating with Dr. David Allen, orthopedist, on September 26, 2005. Dr. Allen diagnosed Plaintiff with an avulsion fracture of the medial malleous and ligament injuries and repeatedly wrote Plaintiff back to work with restrictions that were inconsistent with *Page 5 
Plaintiff's prior work as a drywaller. Despite conservative treatment, Plaintiff continued to complain of left ankle pain.
5. On March 1, 2006, Dr. Allen referred Plaintiff for an MRI, which was completed on March 13, 2006. The MRI showed a healed/chronic left ankle medial malleolus and a deltoid ligament injury, confirming Dr. Allen's previous diagnoses without providing any additional information. As Dr. Allen subsequently testified, "normally by this point if somebody has not improved, they are not going to get improved from additional therapies." Therefore, on March 15, 2006, Dr. Allen directed Plaintiff to continue wearing his ankle brace and recommended that Plaintiff get a second opinion from a foot and ankle surgeon for consideration of surgically reconstructing the ligament.
6. Defendant-Carrier transferred Plaintiff's care to Dr. Mark Foster of Wilmington Orthopedic Group, and Plaintiff first saw Dr. Foster on April 21, 2006. At that time, Dr. Foster diagnosed Plaintiff with left ankle pain following an x-ray of the ankle. Dr. Foster provided Plaintiff with a tibiotalar injection to assess the potential benefit of surgery, and gave Plaintiff graduated work restrictions culminating in a full 8-hour work day.
7. On May 15, 2006, Plaintiff returned to Dr. Foster reporting little to no benefit from the tibiotalar injection. Dr. Foster accordingly ruled out surgery and released Plaintiff from his care at full duty with a 2% permanent partial impairment of the left ankle.
8. On June 20, 2006, Defendants filed a Form 28 Return to Work Report indicating that Plaintiff had returned to work on May 22, 2006. Defendants accordingly terminated Plaintiff's weekly disability compensation. *Page 6 
9. Based on the greater weight of the evidence, the Full Commission finds that Plaintiff did not return to work on May 22, 2006. Defendants have not introduced any evidence regarding the basis for their Form 28 assertion that Plaintiff returned to work on May 22, 2006.
10. Because Plaintiff continued to suffer from ankle pain, he returned to Dr. Foster on August 2, 2006. Plaintiff informed Dr. Foster that he had been unable to return to work as a drywaller, although he had managed to perform some ceiling work despite his ankle pain. Dr. Foster reiterated his earlier conclusions that Plaintiff was at maximum medical improvement and that no additional treatment was recommended, and again released Plaintiff without work restrictions.
11. Plaintiff testified that he continued to suffer from left ankle pain and limited motion but was told by the worker's compensation "case lady" that nothing more could be done because of Dr. Foster's release. Plaintiff became frustrated and decided to treat on his own through his wife's health insurance.
12. During that time, Defendant-Carrier attempted on numerous occasions to contact Plaintiff in an attempt to settle his case, but Plaintiff refused to call Defendant-Carrier back.
13. Plaintiff received a referral to Dr. David Strom at Pinehurst Surgical from his primary care physician. Dr. Strom was one of the foot and ankle surgeons to whom Dr. Allen would have referred Plaintiff in March 2006, if Defendant-Carrier had permitted it. Plaintiff started treating with Pinehurst Surgical on June 27, 2007, at which time he complained of left ankle pain that had become progressively worse over the previous two years. An x-ray of plaintiff's left ankle revealed tibiotalar arthritis as well as an osteochondral defect (OCD) of the left talus. *Page 7 
14. Dr. Strom repaired the OCD, through surgery, on September 17, 2007. Prior to the surgery, Dr. Strom did not feel that the Plaintiff was capable of performing the drywaller job. After the surgery, Dr. Strom indicated that Plaintiff would not have been able to work in any capacity prior to October 16, 2007. As of that date, Dr. Strom felt that a return to work might be appropriate, but that Plaintiff would continue to have trouble walking on uneven surfaces, standing for long periods of time, and lifting heavy weight.
15. Dr. Strom testified that, in a person of Plaintiff's age, osteochondral defects are almost always due to trauma, and that Plaintiff's OCD was consistent with his 2005 fall. Dr. Strom opined that Plaintiff's OCD was probably related to the 2005 injury by accident, based in part on the absence of any medical records showing that Plaintiff had a pre-existing ankle problem. Dr. Strom diagnosed Plaintiff's OCD from the June 27, 2007, x-ray of Plaintiff's left ankle. Dr. Strom acknowledged that OCDs are typically more visible on an MRI than through an x-ray, but noted that they may occur as much as a year after the triggering trauma, potentially explaining why Plaintiff's March 13, 2006, MRI from approximately six months after his injury by accident did not show evidence of the OCD.
16. Dr. Allen testified that an osteochondral defect can develop spontaneously, but that's usually in a younger age group, 20-30 years of age. Given Plaintiff's age, as well as the location of the OCD, Dr. Allen opined that Plaintiff's OCD was related to his September 2005 compensable injury by accident. Dr. Allen acknowledged that an MRI would be the gold standard for diagnosing an OCD, and that his and the radiologist's readings of Plaintiff's March 13, 2006, MRI did not describe any evidence of an OCD. However, Dr. Allen testified that the MRI may have displayed indications of the OCD that he and the radiologist missed, but that could now be identified if Dr. Allen were to review the MRI again with knowledge of the OCD *Page 8 
in mind. As Dr. Allen explained, "you can go back and look at that specific area to see. You would expect that there should be some type of signal change overlying that area. You would expect to see that if it was related to trauma."
17. Dr. Foster opined to a reasonable degree of medical certainty that, based on the March 13, 2006, MRI and his own x-rays of Plaintiff's ankle reviewed on April 21, 2006, Plaintiff was not suffering from an osteochondral defect in April 2006. Dr. Foster explained that an abnormality related to OCD will tend to show up on an MRI even before the condition is clinically evident. Given that Dr. Foster first saw Plaintiff seven months after his injury by accident, he testified, "I think seven months is a reasonable period of time for it to show up." Dr. Foster further explained that OCD does not necessarily develop as a result of injury. As Dr. Foster testified, the mere fact that Plaintiff's OCD appeared in a similar location to Plaintiff's compensable ankle injury, and that it followed Plaintiff's workplace fall, does not imply a causal relationship between Plaintiff's compensable injury by accident and the development of the OCD.
18. The Full Commission gives greater weight to the testimony of Dr. Foster than that of Dr. Allen and Dr. Strom concerning the existence of Plaintiff's osteochondral defect in April 2006, because Dr. Foster was Plaintiff's treating physician for his compensable ankle injury at that time. The Full Commission therefore finds insufficient evidence to support a finding that Plaintiff's OCD, as diagnosed by Dr. Strom in 2007, was causally related to Plaintiff's September 21, 2005, workplace injury by accident.
19. Following his September 21, 2005, workplace accident, Plaintiff attempted to return to work on at least two occasions. First, Plaintiff returned to work for two to three days cleaning up construction debris making $60/day. Plaintiff had to discontinue that work because *Page 9 
of ankle pain. Second, Plaintiff tried to hire his own crew and perform drywalling work on a church. After one day, Plaintiff realized that because of his ankle pain, he could not perform the physical work with his crew and his contract was terminated by the church because of the lack of ability. Plaintiff made roughly $500 during that second failed attempted return to work.
20. Plaintiff testified that he has continued to look for work in the drywall industry but has not been hired because he can no longer work at full capacity or speed. Prospective employers also informed Plaintiff that he was seen as a liability because of his ankle injury.
21. The Full Commission finds that, although Plaintiff may be unable to perform drywalling activities, he has been under no medical work restrictions due to his compensable ankle injury since at least August 2, 2006. The Full Commission accordingly finds that Plaintiff's job search, as described by Plaintiff in his testimony before the Deputy Commissioner, has not been reasonable.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to his left ankle and foot on September 21, 2005. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to have Defendants pay for all medical expenses reasonably related to his compensable injury that were incurred to lessen the period of disability, effect a cure, or give relief. However, medical expenses related to Plaintiff's osteochondral defect are not reasonably related to Plaintiff's compensable injury. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 10 
3. The burden of establishing that an employee is disabled and unable to earn the same wages he had before the injury, either in the same or different employment, is upon the employee, and can be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, such as age, inexperience, or lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff has failed to present evidence sufficient to meet any of the methods set forth underRussell. The Full Commission therefore concludes that Plaintiff has failed to demonstrate that he is disabled due to his compensable ankle injury since at least his second release to full duty by Dr. Foster on August 2, 2006.
4. Plaintiff did not return to work on May 22, 2006, as indicated in Defendants' Form 28. Therefore, Defendants' termination of Plaintiff's disability compensation at that time was improper under N.C. Gen. Stat. § 97-18.1. The Full Commission accordingly concludes that Plaintiff is entitled to a 10% penalty on unpaid disability compensation pursuant to N.C. Gen. Stat. § 97-18(g).
5. Plaintiff's average weekly wage is $850.00. Therefore, Plaintiff is entitled to disability compensation at a rate of $566.67 per week. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have Defendants pay him for his 2% permanent partial impairment rating to his left ankle. N.C. Gen. Stat. § 97-31(2). *Page 11 
7. Following the filing of their Form 33 Request for Hearing, Defendants moved that Plaintiff's claim be dismissed for failure to prosecute pursuant to Rule 613 of the Workers' Compensation Rules of the North Carolina Industrial Commission. The Full Commission concludes that dismissal of Plaintiff's claim is inappropriate under Rule 613.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay Plaintiff temporary total disability compensation at a rate of $566.67 per week from September 21, 2005, through August 2, 2006, when Plaintiff was released to return to work without restrictions by Dr. Foster for the second time. This compensation has already accrued and has been partially paid by Defendants. All remaining compensation owed to Plaintiff shall be paid to Plaintiff in a lump sum, pursuant to the attorneys' fee set out below.
2. Defendants shall additionally pay Plaintiff a penalty of 10% of the amount due in Paragraph 1 of this award due to Defendants' failure to timely provide the payments set forth therein. Such penalty shall be paid at the same time as, and in addition to, the lump sum payment under Paragraph 1.
3. Defendants shall pay Plaintiff for the 2% permanent partial impairment rating to his left ankle.
4. Plaintiff's counsel is entitled to a 25% attorney fee to be deducted from the amounts owed to Plaintiff in Paragraphs 1, 2, and 3 of this Award. *Page 12 
5. Plaintiff's claim for medical expenses related to his osteochondral defect is DENIED.
6. Defendants' motion to dismiss Plaintiff's claim is DENIED.
7. Defendants shall pay the court costs.
This the 7th day of January, 2009.
S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_________________________ PAMELA T. YOUNG CHAIR
S/_________________________ CHRISTOPHER SCOTT COMMISSIONER